**In re Anonymous No. 27 D.B. 77**

Disciplinary Board Docket no. 27 D.B. 77.

PEARLSTINE, *Board Member*, January 11, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the

Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above proceedings.

## I. HISTORY OF PROCEEDINGS

On June 22, 1977, a petition for discipline was filed by chief disciplinary counsel against respondent. It was alleged in that petition as charge 1 that respondent violated six disciplinary rules of the Code of Professional Responsibility as follows:

a. Disciplinary Rule 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

b. Disciplinary Rule 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him;

c. Disciplinary Rule 7-101(A)(3)—dealing with intentionally prejudicing or damaging a client;

d. Disciplinary Rule 9-102(A)—dealing with preserving the identity of funds of a client;

e. Disciplinary Rule 9-102(B)(3)—dealing with the maintenance of complete records of funds, securities and other properties of a client coming into the possession of the lawyer and with the rendering of appropriate accounts to a client regarding them; and

f. Disciplinary Rule 9-102(B)(4)—dealing with the prompt payment of or delivery to the client, upon request, of funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

The thrust of the complaint is that [A] died on November 3, 1970, intestate. Upon renunciation of the son and daughter, letters of administration

were granted to respondent, who also acted as attorney for the estate. No inventory was filed until after a citation was issued as a result of a petition filed by a creditor which, when filed, showed assets of $5,857 of which $4,700 represented the interest of decedent in certain real estate. The first and final account was filed by respondent after a second citation was granted pursuant to the petition of the same creditor.

Included among the claims presented was an award of arbitrators in favor of [B] in the sum of $1,861.25, the claim of [C] for payment of funeral expenses in the sum of $1,148 and the claim of the insurance company for $275 being the premium on the bond of the administrator.

About the middle of July, 1976, respondent told Mrs. [B], the wife of the creditor, that he could not pay her husband's claim against the estate as he did not have the funds on deposit and he told her that he had spent the money for other purposes. In July of 1976, counsel for [B] informed the bonding company for respondent as administrator, of the unsatisfied claim of his client. Respondent admitted inability to comply with the order of the court dated April 19, 1976, which was a decree providing for the payment of the funds in the hands of the accountant in accordance with the schedule of distribution which included the [B] claim. On October 29, 1976, the bonding company paid Mr. [B] $1,861.25 as settlement of the obligation of the estate.

Respondent intentionally and wrongfully converted and appropriated to his own use approximately $3,960 in funds belonging to the estate.

## CHARGE II

[D] died on July 22, 1971, testate, and her last will

and testament was probated on January 3, 1972, and letters testamentary were granted to her sister, [E]. Respondent acted as attorney for the estate.

The will of decedent provided that after payment of just debts and funeral expenses the residue of the estate was to be divided one-third to Mrs. [E], one-third to another sister, [F], one-ninth each to two brothers, [G] and [H], and one-ninth to the [I] Church.

The thrust of this complaint is that respondent failed (a) to accurately include all of the assets and income of the estate in the account filed by respondent; (b) to promptly settle the estate; (c) to include in the petition for distribution the gift to the [I] church; (d) to request rescission of the petition for distribution to include the gift to the church; (e) to advise the executrix that $418.94 for interest from April 22, 1972, to May 31, 1976, was due to his delay in completing the tax audit with the Pennsylvania Department of Revenue, so that the inheritance tax was $2,118.36, of which amount only $1,699.42 was for the tax.

As a result of the foregoing respondent is charged with violation of the following disciplinary rules of the Code of Professional Responsibility:

a. Disciplinary Rule 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

b. Disciplinary Rule 6-101(A)(2)—dealing with handling a legal matter without preparation adequate in the circumstances;

c. Disciplinary Rule 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him;

d. Disciplinary Rule 7-101(A)(2)—dealing with intentionally failing to carry out a contract of employment for professional services; and

e. Disciplinary Rule 7-101(A)(3)—dealing with intentionally prejudicing or damaging a client.

## CHARGE III

Respondent is charged with failure to appear to receive an informal admonition recommended by the proper reviewing authority as a result of respondent's misconduct as described in charge II, the failure to appear, being a violation of D.R. 1-102(A)(6) as it relates to conduct that adversely reflects on respondent's fitness to practice law.

Respondent filed an answer to the petition for discipline, but did not appear at the hearing. The hearing committee only heard the evidence presented by disciplinary counsel.

The matter was referred to hearing committee [   ] consisting of [   ] chairman, [   ] and [   ]. The chairman of the hearing committee, by letters dated July 18, 1977, and July 26, 1977, advised respondent that a pre-hearing conference had been scheduled for July 27, 1977, and August 11, 1977, respectively. Respondent replied to these letters indicating that he was being treated for high blood pressure and could not appear for either conference. Other than his letters respondent presented no other medical evidence to support his physical inability to appear at the hearings.

Respondent was advised by assistant disciplinary counsel both by regular mail and registered mail, on August 5, 1977, that a hearing in the matter had been scheduled for August 11, 1977. In addition thereto, at least five separate attempts were made to serve respondent personally with a subpoena duces tecum and the process server was unable to

serve respondent on any of the five occasions, although he was observed by the process server to be in his home on one occasion.

The hearing was held on August 11, 1977.

Petitioner presented its case by offering testimony of five witnesses and 26 numbered exhibits. Respondent [ ] did not appear nor was he represented by counsel.

Petitioner's exhibits consisted of documents relating to letters of notification from petitioner to respondent as administrative exhibits and with respect to the charges themselves, correspondence in connection with the [A] estate, the docket entries, excerpts of filings from the estate of [A]; in the [D] matter, correspondence between petitioner and respondent, papers and documents in the estate of [D], including the petitions for citation, the inventory, tax returns, first and final account and other documents from the estate of [D], deceased.

Neither petitioner nor respondent filed any exceptions to the hearing committee report and therefore we would adopt the findings of fact of the hearing committee which were as follows:

## FINDINGS OF FACT

1. Respondent is an attorney admitted to law in the Commonwealth of Pennsylvania, whose office is located at [ ], Pa., which is also his residence. Petitioner is not listed in the [ ] yellow pages directory under "Attorneys," but he is listed in white pages of the telephone book with no indication that he is an attorney.

2. By letters from the chairman of the hearing committee dated July 18, 1977, and July 26, 1977,

respondent was advised that a pre-hearing conference had been scheduled for July 27 and August 11, respectively. In his reply to those letters, respondent indicated that he was being treated for high blood pressure and could not appear for either conference. Other than his letters, respondent presented no medical evidence to support his physical inability to appear at the hearing.

3. Respondent was advised by assistant disciplinary counsel, registered mail and regular mail on August 5, 1977, that a hearing on the matter had been scheduled for August 11, 1977. In addition thereto, at least five separate attempts were made to serve respondent personally with a subpeona duces tecum and the process server was unable to serve the respondent on any of the five occasions although he was observed by a process server to be in his home on one occasion.

## CHARGE 1

4. [A] died on November 3, 1970, intestate and a resident of [   ], Pa., possessed of real and personal property.

5. Decedent's only heirs renounced their right to take out letters of administration and on December 29, 1970, letters of administration were issued to respondent and respondent thereafter acted as administrator of the estate as well as the attorney for the estate.

6. No inventory was filed by respondent until after a citation was issued, returnable September 24, 1973, as a result of a petition of a creditor of the estate, [B].

7. An inventory was filed on September 24, 1973, showing total assets in the estate of $5,857.24. The inventory disclosed that, at the time it was filed,

respondent had liquidated all the assets in the estate into cash.

8. On November 13, 1975, a first and final account was filed by respondent showing disbursements of $1,897.50, leaving a balance for distribution of $3,960.74.

9. On January 20, 1976, and on March 16, 1976, hearings were held before the Honorable [J], Judge of Orphans' Court Division of the Common Pleas Court of [   ] County, Pa., for the purpose of taking evidence on the claims of certain alleged creditors of the estate.

10. On April 19, 1976, Judge [J] issued a decree providing for the payment to three creditors of the estate in the total amount of $3,284.25. Said claims consisted of an award in favor of [B] in the amount of $1,861.25; an award in favor of [C] for the payment of funeral expenses in the amount of $1,148 and an award in favor of [K] insurance company for bond premiums.

11. Respondent has not made any payments in accordance with the decree of the orphans' court to [B], [C] or [K] insurance company.

12. On or about November 30, 1976 [C's] claim was paid by [L] insurance company on the bond posted by respondent as administrator.

13. On September 7, 1976, respondent told [   ], claims manager from [L] Insurance Co., that he had used the estate funds to pay his own personal expenses.

14. In June or July, 1976, in response to an inquiry by Mrs. [B], wife of [B], concerning the payment of the money due [B], respondent told Mrs. [B] that he had used the money in the estate for other things and his bonding company would send a check.

## CHARGE 2

15. [D], a single person, died on July 22, 1971, testate, while a resident of [  ], Pa., and seized of real and personal property. The last will and testament of decedent, dated April 22, 1961, was probated on January 3, 1972, and letters testamentary were issued to the nominated executrix, Mrs. [E], a sister of decedent, at which time respondent was acting as attorney for the the estate.

16. The will of decedent provided that after payment of just debts and funeral expenses, the rest, residue and remainder of the estate was to be divided, one-third to Mrs. [E], one-third to another sister, [F], one-ninth to two brothers, [G] and [H], one-ninth to the [I] church.

17. On or about January, 1973, respondent prepared and caused an inventory to be filed with reference to the aforementioned estate, which inventory reflected the following as personal property of decedent: (a) 81 shares of U.S. Steel common stock @$28.25 per share (when in fact there were 91 shares owned by decedent at the date of death. In addition there is no indication of the accrued dividends on said stock as of the date of death); (b) [  ] bank checking account; (c) 305.319 shares of the Axe Houghton Fund B @$7.97 per share, when in fact the shares did not constitute a part of the probate estate; (d) ten U.S. $50 Savings Bonds owned jointly by decedent and Mrs. [E] when in fact this asset did not constitute a part of the probate estate; and (e) in addition, a parcel of real estate located in [  ] County was listed as a probate asset. The net result was that the inventory overvalued the assets of the estate.

18. Despite the fact that the estate of [D] con-

sisted of a relatively few number of probate assets, respondent failed to adequately investigate the nature of decedent's holdings at the time of death in order to ascertain the proper administration thereof in his capacity as attorney for the estate.

19. On April 4, 1973, through ex parte action, the local agent of the Pennsylvania Department of Revenue filed notice of appraisal of an account in the [ ] teachers' credit union in the amount of $532.06, which had been held in the name of decedent only, notice of which was given to Mrs. [E].

20. Respondent prepared and caused to be filed on or about August 1973, a first and final account.

21. The first and final account was sent to audit on Monday, November 19, 1973, and against the purported total assets value of $16,884.58, were shown disbursements in the amount of $4,872.31, leaving a total for distribution of $12,012.27. Attached to the petition for distribution was an "election in kind" dated November 18, 1973, and signed by the two sisters and the two brothers of decedent, witnessed by respondent, in which they requested distribution to them of the aforedescribed real estate which had been valued at $10,000 in the inventory.

22. On December 10, 1973, an order of court was filed reciting that "it appearing to the court that the account in this case was prematurely filed." The order of confirmation nisi was vacated and set aside and the account was to be refiled not less than six months "after the first complete advertisement of the letter in accordance with the law and upon payment of any additional costs."

23. As of April 29, 1976, the estate had not been settled, nor had the Pennsylvania inheritance tax

due and owing to the Commonwealth of Pennsylvania been paid by the estate, thereby resulting in additional interest charges.

24. By a letter dated May 19, 1976, respondent advised Mrs. [E] that "the Inheritance Tax is $2,118.36," and he requested that she send him a check in that amount which she promptly did.

25. On May 28, 1976, respondent paid to the department of revenue the sum of $2,118.36, based upon a "clear asset value" of $11,329.47, allowing a one-ninth charitable deduction.

26. Of the total amount of $2,118.36 claimed by the department of revenue in regard to this estate, $1,699.42 was for tax and $418.94 was the interest "from 4/22/72 to 5/31/76."

27. By letter from Mrs. [E], dated September 10, 1976, she advised respondent that in her disposition of the U.S. Steel stock, she had caused transfer of one-ninth of the amount of the shares the estate held as of June, 1976, "the original number of which had been increased by virtue of stock splits," directly to the [I] Church.

28. The "election to take in kind" signed by the four relatives of decedent in regard to the real estate was part of the petition for distribution as presented to the court.

29. As a result of the petition for distribution and attached papers which respondent had caused to be filed with the court, by a decree dated December 3, 1976, the court ordered distribution of the unconverted real estate at a valuation of $10,000 to the four relatives of decedent in the same decree: (a) After deducting the value of the Axe Houghton Fund B Shares from the purported remaining asset value of the estate, since an amount of only

$1,067.34 was reflected, the court decreed distribution of that amount to Mrs. [E], "in charge repayment of monies advanced" for payment of the transfer inheritance tax; and (b) the decree made *no* provision whatsoever with regard to the one-ninth interest of the [I] Church in the whole of the assets of this estate.

30. As a result of the inclusion in the estate inventory of the value of the Axe Houghton Fund B Shares, there was an overpayment to the Commonwealth of Pennsylvania of tax and interest. There is no indication that respondent attempted to secure a refund from the Commonwealth of Pennsylvania as would otherwise be right and proper under the circumstances.

## CHARGE 3

31. Because of the conduct of respondent as described in charge 2, upon the recommendation of the proper reviewing authorities, respondent was scheduled to receive an informal admonition on Monday, December 20, 1976, at 10:00 a.m., in the district [ ] office of the disciplinary board, in [ ], to be administered by disciplinary counsel, and was given due and timely notice thereof.

32. On December 20, 1976, respondent did not appear at the place so appointed for the informal admonition and has not given any excuse for his failure to so appear.

## II. DISCUSSION

Respondent intentionally and wrongfully converted and appropriated to this own use approximately $3,960 in funds belonging to the estate of [A]. Not only did he violate and abuse his position as

an attorney, but since he also acted as administrator, breached his fiduciary duties, but this misconduct involves dishonesty and deceit in violation of D.R. 1-102(A)(4); it also prejudiced and damaged the estate, its heirs and creditors in violation of D.R. 7-101(A)(3). Respondent used the estate funds for his own personal use and admitted his inability to repay any part thereof, which constitutes a violation of D.R. 9-102(A)(4). Petitioner had a substantial burden of proof because of the failure of respondent to appear at the hearing and answer questions. Much of petitioner's case had to be proved from records which were introduced as exhibits. Therefore, there was no specific proof that a separate bank account was or was not opened and maintained in this estate. Therefore, there is no clear proof of a violation of D.R. 9-102(A) dealing with the preserving of the identity of funds of a client. Likewise, there was no evidence with respect to the maintenance of records of funds, securities and other properties of a client to sustain a violation of D.R. 9-102(B)(3).

We agree with the conclusion of the hearing committee that a violation of D.R. 1-102(A)(4) encompasses the lesser charge of neglect under D.R. 6-101(A)(3).

## CHARGE 2

Charge 2 dealt with the incompetence of respondent in handling the [D] Estate. The evidence of such incompetence is derived from correspondence and the physical exhibits which were admitted into evidence by the hearing committee whose findings of fact are adopted by this board. From that evidence, the overpayment of estate tax to the Commonwealth and the failure to secure a refund of

that payment is clearly established. It is also clearly established that there was a failure to investigate the nature of the holdings of decedent. There was no evidence of conduct involving dishonesty, fraud, deceit or misrepresentation and therefore the charge of violating D.R. 1-102(A)(4) has not been sustained. Nor is there any evidence to support the charge of violation of D.R. 7-101(A)(2) dealing with intentionally failing to carry out a contract of employment for professional services; nor is there any evidence that respondent violated D.R. 7-101(A)(3) dealing with intentionally prejudicing or damaging a client. There is clear evidence that respondent handled the legal matter without preparation adequate in the circumstances and neglected a legal matter entrusted to him in violation of D.R. 6-101(A)(2) and 6-101(A)(3).

## CHARGE 3

Finally, Charge 3 has been clearly established that respondent failed to appear to receive an informal admonition after receiving proper notice of the time and place without any excuse. This constitutes an independent act of professional misconduct and adversely reflects on respondent's fitness to practice law in violation of D.R. 1-102(A)(6). Under Rule 89.205 of the rules of the disciplinary board and Rule 203.(b)(2) of the Pennsylvania Rules of Disciplinary Enforcement, it is specifically provided that the willful failure to appear before the Supreme Court, the board or disciplinary counsel for censure, private reprimand or informal admonition shall be an independent ground for discpline and that the board and disciplinary counsel are "tribunals" within the meaning of the disciplinary rules.

We would agree with the hearing committee that respondent violated the following disciplinary rules:

1-102(A)(4)—engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

6-101(A)(2)—handling a legal matter without preparation adequate in the circumstances;

6-101(A)(3)—neglecting a legal matter entrusted to him;

7-101(A)(3)—prejudicing and damaging his client;

1-102(A)(6)—engaging in any other conduct that adversely reflects on his fitness to practice law.

On July 2, 1975, the Supreme Court of Pennsylvania suspended [   ] from the practice of law for a period of twelve months, no. 93 Disciplinary Docket no. 1 (21 DV 74) (MP-15,013). In its report and recommendations in that action the disciplinary board accepted and adopted as part of the opinion in that case the findings of fact and discussion in the report of the hearing committee dated January 20, 1975. The hearing committee held that respondent had violated Disciplinary Rule 1-102(A)(4) and that respondent had engaged in conduct involving dishonesty, fraud, deceit and misrepesentation.

Also on the same date the Supreme Court of Pennsylvania suspended one [   ] from the practice of law in the Commonwealth of Pennsylvania for a period of one year, no. 85 Disciplinary Docket no. 1 (48 DV 73) (MP-14,536). In its report and recommendations to the Supreme Court in that action, the disciplinary board concluded that respondent had violated Disciplinary Rule 6-101(A)(3) by neglecting legal matters entrusted to him and also

concluded that respondent had violated Discipli-
nary Rule 7-101(A)(2) by failing to carry out con-
tracts of employment entered into with clients for ·
professional services.

## III. RECOMMENDATION

The disciplinary board respectfully recommends
to your honorable court that the recommendation of
the hearing committee be adopted and that
respondent [    ] be suspended from the practice of
law for a period of twelve months.

## ORDER

EAGEN, *C.J.*, And now, February 3, 1978, the
recommendation of the Disciplinary Board of the
Supreme Court of Pennsylvania, dated January 11,
1978, is rejected; and it is ordered that [Respon-
dent] be, and he is forthwith suspended from the ·
bar of this court and in all the courts under its
supervisory jurisdiction, for a period of three years,
and until further order of the Supreme Court.

Mr. Justice O'Brien did not participate in this matter.
Mr. Justice Larsen would enter an order of disbarment.